UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DANIEL OCTAVIO C.F.,

Petitioner,

v.

WARDEN, GOLDEN STATE ANNEX DETENTION FACILITY, et al.

Respondents.

No. 1:26-cv-05847-TLN-SCR

A# 246-072-133

**RELEASE ORDER**

This matter is before the Court on Petitioner Daniel Octavio C.F.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus (the "Petition"). (ECF No. 1.) Respondents filed an opposition. (ECF No. 8.) For the reasons set forth below, the Petition is GRANTED and the Court orders Petitioner's IMMEDIATE RELEASE.

///

///

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is an asylum-seeker who entered the United States with his wife on November 24, 2022. (ECF No. 1 at 6.) After presenting themselves to immigration authorities at the border, they were released on parole. (*Id.* at 6, 30.) In the time that followed, Petitioner built a life, worked, and welcomed a United States citizen son. (*Id.* at 6–7, 25.) Petitioner obtained employment authorization and worked in construction. (*Id.* at 11, 26; ECF No. 9 at 2.) He also filed an application for asylum, which remains pending. (ECF No. 1 at 11, 27; ECF No. 8 at 5.)

On June 14, 2026, Petitioner was arrested by Miami-Dade County Sheriff Officers for misdemeanor driving under the influence and other related misdemeanors. (ECF No. 8 at 13–14.) According to Petitioner, he had gone to a friend's house to watch the World Cup and on his way home mistakenly ran a red light. (ECF No. 1 at 7.) A police officer pulled him over and he complied. (*Id.*) After providing the officer his documents, Petitioner was ordered out of the car. (*Id.*) Another officer arrived and placed Petitioner's hands behind his back and handcuffed him in a violent way, threw Petitioner to the ground, put his knee on Petitioner's head, and dragged Petitioner's head against the asphalt before putting him into the patrol car. (*Id.* at 7–8.) Petitioner was then taken to the Dade County Jail. (*Id.* at 8.) Petitioner paid bond, but instead of being released he was transferred to the custody of U.S. Immigration and Customs Enforcement ("ICE"). (*Id.*; ECF No. 8 at 5.) While detained in Florida, Petitioner requested a custody redetermination hearing. (ECF No. 8 at 16.) An immigration judge ("IJ") denied Petitioner release on bond by reason of "[f]light risk; danger to the community; pending DUI." (*Id.*) Petitioner was subsequently transferred to the Golden State Annex detention facility where he remains detained. (ECF No. 1 at 2.)

Petitioner filed the instant Petition on July 27, 2026. (*Id.* at 1.) Petitioner challenges the lawfulness of his civil immigration detention and seeks immediate release. (*Id.* at 22–23.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in

custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 22–23.) In opposition, Respondents concede "[t]his case is in the category of immigration habeas cases for which the Court has typically ordered a bond hearing," but maintain Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").[2] (ECF No. 8 at 1–2.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

---

[2] Although Respondents only state generally that Petitioner is "subject to the mandatory pre-order detention statute, 8 U.S.C. § 1225(b)," based on the cases Respondents rely on and the content of their brief, the Court understands Respondents to be referring to § 1225(b)(2) and not § 1225(b)(1). (ECF No. 8 at 1–2.)

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A. Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear interest in his continued freedom protected by the Due Process Clause. The government's decision to release Petitioner on parole was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. There is no indication on the record that Petitioner violated the terms of his release and Respondents does not claim otherwise. Petitioner has lived in the United States for approximately four years and in that time, he worked, pursued his asylum case, and welcomed a United States citizen child. The amount of time he spent living freely in this country and the life he built in that time create a powerful interest for Petitioner in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly).

The Court rejects Respondents' argument that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2) as the Ninth Circuit has confirmed the government's interpretation of the statute is incorrect. *Rodriguez Vazquez v. Bostock*, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). The mandatory detention scheme of § 1225(b)(2) applies only to noncitizens entering the United States at the border. *Id.* at *10. In contrast, individuals like Petitioner who are "present without admission who are apprehended in the interior of the United States," are subject to discretionary detention under 8 U.S.C. § 1226(a) ("§ 1226(a)"). *Id.* at *3. Accordingly, the Court finds Petitioner maintains a clear interest in his continued liberty protected by the Due Process Clause.

B. Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. "The government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings[.]" *Hernandez*, 872 F.3d at 990. However, to detain a noncitizen for those reasons, an IJ must examine the nine factors set forth in *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024). Upon review of the record, the IJ's decision to deny Petitioner release does not pass constitutional muster.

IJ detention determinations are reviewed for "abuse of discretion." *Martinez*, 124 F.4th at 783–84 (9th Cir. 2024). It is an abuse of discretion for an IJ to render a decision that is "arbitrary, irrational, or contrary to law." *Bonilla v. Lynch*, 840 F.3d 575, 581 (9th Cir. 2016) (quoting *Avagyan v. Holder*, 646 F.3d 672, 678 (9th Cir. 2011)). A decision with no reasoned explanation for the IJ's findings is an abuse of discretion. *See Hernandez Arechiga v. Bowen*, No. 26-CV-1516, 2026 WL 1500398, at *4 (C.D. Cal. May 26, 2026) (finding abuse of discretion where IJ

denied bond based on conclusory findings without explanation and collecting cases finding similarly); *see also Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005) (citing *Yepes–Prado v. INS*, 10 F.3d 1363, 1370 (9th Cir. 1993) ("Immigration judges, although given significant discretion, cannot reach their decisions capriciously and must indicate how they weighed the factors involved and how they arrived at their conclusion.") (cleaned up); *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023) (citing *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007) (IJs must give "reasoned consideration to the evidence as a whole, [make] supportable findings, and adequately explain[] its reasoning").

Here, the IJ's decision to deny Petitioner's request for custody redetermination is conclusory and lacks any indication that the IJ meaningfully considered evidence or testimony. The IJ's one-sentence decision contains no mention of the *In re Guerra* factors or any other reasoned explanation as to how the IJ found Petitioner poses a danger to the community or a flight risk such that no alternatives to detention could mitigate those risks. While Petitioner was detained by ICE after he was arrested for a DUI, "criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses must be considered." *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) *abrogated on other grounds* (citing *Guerra*, 24 I. & N. Dec. at 40). Without any meaningful explanation of the IJ's reasoning, factors considered, evidence weighed, or factual support for the IJ's finding, Petitioner has not been provided adequate due process to ensure the deprivation of his liberty is justified. Respondents do not argue Petitioner is a flight risk or danger to the community. The Court thus finds the risk that Petitioner has been erroneously deprived of his liberty is high.

As to the final *Mathews* factor, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Notice and custody determination hearings are routine processes for Respondents and are indeed the processes owed to Petitioner as someone detained under § 1226(a). Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Respondents sets forth no legitimate interest in detaining Petitioner without these processes.

Upon consideration of the *Mathews* factors, the Court finds due process required that Petitioner receive notice and a hearing before a neutral decisionmaker prior to detention to determine whether his detention was justified. He received neither. Petitioner's detention therefore violates the Fifth Amendment Due Process Clause.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Daniel Octavio C.F. (A# 246-072-133) from custody on the same conditions Petitioner was under at the time he was transferred to ICE custody on June 15, 2026. At the time of release, Respondents must return all of Petitioner's documents and possessions. **Respondents must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. **The Clerk of Court is directed to serve Golden State Annex Detention Facility with a copy of this Order.**

4. Petitioner's Application to Proceed *In Forma Pauperis* (ECF No. 2), Motion for TRO (ECF No. 3), and Motion to Appoint Counsel (ECF No. 4) are DENIED as moot.

5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: October 26, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE